1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11   EDITH CARTWRIGHT,                 No. 2:05-cv-0725-MCE-KJM
                                       No. 2:05-cv-2439-MCE-KJM
12           Plaintiff,

13
             v.                        MEMORANDUM AND ORDER
14
     UNIVERSITY OF CALIFORNIA,
15   DAVIS, a public entity;
     REGENTS OF THE UNIVERSITY OF
16   CALIFORNIA, DAVIS, as
     individuals and in their
17   official capacity; SAL GENITO,
     as an individual and in his
18   official capacity; ALLEN
     TOLLEFSON, as an individual
19   and in his official capacity;
     DENNIS SHIMEK, as an
20   individual and in his official
     capacity; DANIEL GRAY, as an
21   individual and in his official
     capacity; HUMBERTO GARCIA, as
22   an individual and in his
     official capacity; JULIE
23   MCNEAL, as an individual and
     in her official capacity,
24   LOUIE J. SLAYTON, as an
     individual and in his official
25   capacity; DARRELL RALLS, as an
     individual and in his official
26   capacity; AL MININE, as an
     individual and in his official
27   capacity; AND DOES 1-110,

28           Defendants.

                          1

1    Plaintiff Edith Cartwright ("Plaintiff") instituted the
2 present actions following her termination by Defendant University
3 of California, Davis ("University") on or about November 11,
4 2003.  Plaintiff alleges that she was subjected to discrimination
5 and retaliation by the University that extended over an eleven
6 year period.  In addition to the two actions presently before the
7 Court, Plaintiff has filed two additional suits involving many of
8 the same facts and circumstances.  The first of these suits was
9 filed in 2003, and is currently pending in Yolo County Superior
10 Court.[1]  The other suit was filed in the Central District of
11 California, but was transferred to the Eastern District pursuant
12 to Defendants'[2] Motion to Transfer Venue.[3]

13    Although similar, the four suits are not identical.  Of
14 critical importance, Plaintiff's Yolo County action is limited to
15 injuries suffered prior to Plaintiff's termination in 2003.  The
16 instant actions, on the other hand, include additional claims for
17 termination and post-termination injuries.  The suits differ
18 further with respect to the causes of actions pled.  While
19 Plaintiff's Yolo County suit asserts only state causes of action,
20 the instant cases include additional claims arising under federal
21 law.

22 ///

23

24    [1]This case has been assigned case number YCSC 03-76.

25    [2]In addition to the University, Plaintiff names as
26 Defendants the University's Regents as well as nine other
   individuals associated with the University.

27    [3]This case has been assigned case number 06-128.  The case
   is not presently before the Court with respect to Defendants'
28 current motion.

1    This matter is now before the Court on Defendants' Motion to
2  Abstain.  Specifically, Defendants ask this Court to stay Eastern
3  District cases 05-cv-0725-MCE-KJM and 05-CV-2439-MCE-KJM until
4  there has been a final disposition of Plaintiff's Yolo County
5  Superior Court action.  For the reasons set forth below,
6  Defendants' Motion to Abstain is denied.[4]

7
8                              **BACKGROUND**[5]

9

10    Plaintiff was hired by the University in 1987 to serve as a
11  Licensed General Contractor.  Shortly thereafter, Plaintiff
12  alleges that two of her male superiors began subjecting her to
13  discrimination and harassment.  The discrimination and harassment
14  was ongoing and ultimately prompted Plaintiff, in 1991, to file
15  complaints with the University, the Department of Fair Employment
16  and Housing, and the Yolo County Superior Court.  The University
17  entered into a written settlement agreement with Plaintiff under
18  which Plaintiff agreed to release her claims in return for
19  $30,000 and a promise by the University not to retaliate.
20    Three years later, in 1994, Plaintiff brought a new
21  discrimination and retaliation suit in Yolo County Superior Court
22  after she was passed over for a promotion in favor of a less
23  qualified candidate.

24  _____
25    [4]Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefing.  E.D.
26  Cal. Local Rule 78-230(h).

27    [5]The Court relies extensively on Plaintiff's Complaint in
    05-CV-2439-MCE-KJM in reciting the facts of this case.  Unless
28  otherwise indicated, all citations to the Complaint reference the
    Complaint filed in that action.

1  Plaintiff dismissed that suit as well after being encouraged to
2  do so by one of her superiors, Managing Service Officer Andrea
3  Ramiro.[6]  The dismissal was intended as a good faith gesture in
4  anticipation of a meeting Ms. Ramiro had scheduled for Plaintiff
5  with the University's Associate Vice Chancellor of Human
6  Resources, Dennis Shimek.  The meeting was presented to Plaintiff
7  as an opportunity to voice her concerns.  Plaintiff met with Mr.
8  Shimek and aired her grievances.  She also made several requests
9  related to working conditions and pay.  The University took the
10 requests under consideration, but two weeks later informed
11 Plaintiff that the requests were denied.

12     According to Plaintiff, despite her repeated complaints, the
13 discrimination, harassment and retaliation continued.  In the
14 eight year period between 1995 and 2003, Plaintiff documents a
15 litany of discriminatory and retaliatory acts, each in exhaustive
16 detail.  While a complete inventory of these events is not
17 necessary for the purposes of this Order, the Court provides the
18 following generalized list as a representative overview.
19 Plaintiff alleges:

20     (1) that she was repeatedly subjected to discriminatory
       treatment based on her gender, race and sexual preference,
21     and that said discrimination involved repeated verbal
       abuse;[7]
22     (2) that she was the focus of ongoing retaliation for
       reporting previous instances of discrimination and
23     harassment;

24 ─────────────

25     [6]Plaintiff claims that Ms. Ramiro told her that "[l]ife at
   the university will be much easier for you if you dismiss your
26 complaint."

27     [7]Plaintiff alleges that at different times, she was referred
   to as a "wasted piece of ass," a "queer cunt," a "militant, bra-
28 burning lesbian trouble-making cunt," a "split tail," and a
   "crusading Joan of Arc and Mother Teresa" (Compl. at 12-13, 18).

(3) that she was passed over for promotions on multiple occasions in favor of less qualified applicants;

(4) that she was paid less than her male co-workers and given inferior office space although she performed similar job functions and shared a similar job classification;

(5) that superiors instructed Plaintiff's co-workers not to associate with Plaintiff because she was a "trouble maker" and "black widow";

(6) that superiors encouraged Plaintiff's employees to make unfounded complaints against her;

(7) that she was wrongfully subjected to multiple disciplinary investigations, characterized by Plaintiff as "witch hunts," for conduct that was either fabricated or not the proper subject of disciplinary action;[8]

(8) that said disciplinary investigation were biased and deprived Plaintiff of due process;

(9) that she was given lousy work assignment and, in some instances, no work at all, in a concerted effort to ensure her failure and/or embarrassment;

(10) that she was repeatedly denied credit or recognition for work she had completed successfully;

(11) that her personal property was converted or destroyed by superiors; and

(12) that, in an unrelated employment discrimination suit brought by a former co-worker, she was instructed by University counsel not to cooperate and that, if she was deposed by opposing counsel, she should claim a lack of memory with respect to certain events.

Plaintiff made frequent complaints about the above conduct, which she transmitted through a variety of different channels including the University's Human Resources Office, the Department of Fair Employment and Housing, the Yolo County Superior Court, the United States Equal Employment Opportunity Commission, the University's Whistleblower Hotline, and multiple supervisors.

---

[8]Plaintiff alleges that an investigation was conducted to look into allegations that Plaintiff (1) hosted wild, lesbian sex parties at her home, (2) performed yard work in the nude, and (3) retrieved her newspaper topless.  (Compl. at 43).

1   Despite these repeated complaints, Plaintiff claims that the
2   University never took any action to rectify her situation.
3   Instead, the University placed Plaintiff on Administrative Leave
4   on April 25, 2003.  Then, on September 16, 2003, Plaintiff's
5   supervisor sent her a letter entitled "Notice of Intent to
6   Dismiss."  The letter represented the University's ultimate
7   resolution of one of the myriad disciplinary investigations it
8   had conducted against her, and served as notification to
9   Plaintiff that the University intended to dismiss her.  Plaintiff
10  responded by lodging complaints with the Yolo County Superior
11  Court[9] and the University's Whistleblower Hotline.  Plaintiff was
12  fired several weeks later, on November 7, 2003.

13      Because Plaintiff's Yolo County action was filed prior to
14  her termination, the complaint in that action did not include any
15  of the termination-related injuries allegedly suffered by
16  Plaintiff.  In addition, the Yolo County complaint failed to
17  plead several federal causes of action available to Plaintiff.
18  In order to cure these deficiencies, Plaintiff filed 05-cv-0725-
19  MCE-KJM, the first of the two actions presently before this
20  Court, on April 13, 2005.  The new complaint includes Plaintiff's
21  termination-related injuries and adds several federal claims not
22  pled in Plaintiff's state court action.[10]

23  ///
24  ///

25
26  [9]Plaintiff's Superior Court action was filed on October 31,
    2005 and, as indicated above, was assigned case number YCSC 03-
    76.
27
28  [10]As discussed above, the complaint in YCSC 03-76 is limited
    to state causes of action.

1    Approximately six months later, Plaintiff claims she
2  suffered new post-termination injuries when the University failed
3  to process her Whistleblower Complaint.  Plaintiff sought to
4  incorporate these new injuries into her pending state and federal
5  actions.  Defendants refused to stipulate to Plaintiff's attempts
6  at amendment and, instead, brought terminating motions in both
7  actions.  Plaintiff then filed two new actions in order to
8  preserve her post-termination claims while Defendants'
9  terminating motions were pending.  The complaints in the two new
10 cases are nearly identical.  YCSC 05-1778 was filed in Yolo
11 County Superior Court on November 7, 2005.  CV 05-4610 PJH was
12 filed in the Federal District Court, Northern District of
13 California, on November 9, 2005, but was transferred to the
14 Eastern District pursuant to Defendants' Motion to Transfer
15 Venue.  The case was assigned new case number 06-cv-0128-MCE-KJM
16 upon arrival in the Eastern District.

17    After prevailing on the terminating motion brought by
18 Defendant in 05-cv-0725-MCE-KJM, Plaintiff again sought to amend
19 YCSC 03-76 and 05-cv-0725-MCE-KJM to include her supplemental
20 actions.  When Defendants refused to stipulate to said
21 amendments, Plaintiff filed a Motion for Leave to Amend and
22 Supplement in Yolo County Superior Court in a renewed attempt to
23 consolidate YCSC 03-76 with her supplemental state action, YCSC
24 05-1778.
25 ///
26 ///
27 ///
28 ///

Immediately before the hearing on said motion, Defendants removed
the supplemental state case to the United States District
Court,[11] thereby preventing the state court from consolidating
the state court actions and causing two nearly identical cases to
be on file in the Eastern District.  (Opp. at 3).

All of this posturing has resulted in the procedural jumble
presently before the Court.  To briefly summarize, Plaintiff is
currently litigating four suits arising out of similar facts and
circumstances.  Plaintiff's first action, YCSC 03-76, was brought
in Yolo County Superior Court in 2003, and is limited to injuries
suffered pre-termination.  The second action, 05-cv-0725-MCE-KJM,
was brought in the United States District Court, Eastern District
of California in 2005, and adds termination-related injuries and
federal causes of action not pled in YCSC 03-76.  Plaintiff's
third action, also brought in 2005, was filed in Yolo County
Superior Court and adds post-termination causes of action not
pled in Plaintiff's first two suits.  Defendants have removed
this action to the Eastern District where it has been assigned
case number 05-CV-2439-MCE-KJM.  The last of the four actions was
brought in the United States District Court, Northern District of
California, but was recently transferred to the Eastern District.
The Complaint in this action is nearly identical to the Complaint
in 05-CV-2439-MCE-KJM.  The three pending federal cases have been
related pursuant to a Notice of Related Cases filed by
Defendants.

///

---

[11]This case has been assigned case number 05-CV-2439-MCE-
KJM.

1    Defendants now ask the Court to stay federal cases 05-cv-
2  0725-MCE-KJM and 05-CV-2439-MCE-KJM until Plaintiff's original
3  Yolo County action reaches conclusion.  Defendants allege that
4  Plaintiff's filing of four similar cases is an "abuse of the
5  legal system" and a clear "attempt to forum shop."  (Mem. P. & A.
6  in Supp. Mot. Abstain at 6).  Defendants further accuse Plaintiff
7  of "trying to harass and burden the court" (Id. at 4).  Plaintiff
8  answers that Defendants have heretofore resisted Plaintiff's
9  repeated attempts to consolidate all four of her cases into one
10 comprehensive state or federal action, and accuses Defendants of
11 attempting to scuttle claims by removing them to federal court
12 only to then seek abstention.  (Opp. 3:21-22, 6:4-5).  Plaintiff
13 contends that its multiple filings became necessary only as a
14 result of Defendants' procedural gamesmanship.

15
16                              **STANDARD**
17

18    Defendants rely on the Colorado River abstention doctrine in
19 asking the Court to stay Eastern District cases 05-cv-0725-MCE-
20 KJM and 05-CV-2439-MCE-KJM.  Colorado River Water Conservation
21 Dist. v. United States, 424 U.S. 800, 813-820 (1976).  Under
22 Colorado River, a District Court may abstain from hearing a case
23 presently before it if "substantially similar" litigation is
24 pending in state court.  Nakash v. Marciano, 882 F.2d 1411, 1416
25 (9th Cir. 1989).
26 ///
27 ///
28 ///

Generally, the pendency of an action in state court is no bar to proceedings concerning the same matter in federal court; however, the Colorado River abstention doctrine creates an "extraordinary and narrow exception" to this general rule. Colorado River, 424 U.S. at 813, 817; Moses H. Cone Memorial Hosp. V. Mercury Const. Corp., 460 U.S. 1, 14-15 (1983).

"Colorado River abstention should be invoked only in 'exceptional circumstances,'" Nakash, 882 F.2d at 1415 (quoting Moses H. Cone, 460 U.S. at 19), as federal courts have a virtually unflagging obligation to exercise the jurisdiction given them. Colorado River, 424 U.S. at 817. Indeed, the mere potential for conflict in the results of federal and state adjudications does not, without more, warrant staying exercise of federal jurisdiction. Id. at 816. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." Id. at 813.

The doctrine announced in Colorado River "'rest[s] on considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Nakash, 882 F.2d at 1415 (quoting Colorado River, 424 U.S. at 817 (citations and quotations omitted)).

///
///
///
///
///
///

10

Courts typically look at the following six factors to determine whether <u>Colorado River</u> abstention is appropriate: (1) whether either the state or federal court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; and (6) whether the state proceeding is adequate to protect the parties' rights. <u>Nakash</u>, 882 F.2d at 1415.

These factors are not intended as a mechanical checklist. <u>Id.</u>  Rather, they are to be applied in a pragmatic and flexible way as part of a balancing process, with the balance heavily weighted in favor of the exercise of jurisdiction. <u>Id.</u>; <u>Moses H. Cone</u>, 460 U.S. at 16.  "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." <u>Moses H. Cone</u>, 460 U.S. at 16.  Moreover, "[c]onsistent with its emphasis on a flexible approach, the Supreme Court has recognized its list is not exclusive and that other factors could be considered." <u>Nakash</u>, 882 F.2d at 1416. Accordingly, the Ninth Circuit has injected one additional consideration into the analysis – whether a plaintiff's filing of multiple lawsuits is motivated by an attempt to forum shop or avoid adverse rulings in a parallel state court proceeding. <u>Id.</u> at 1417.

///

///

///

///

11

1

**ANALYSIS**

2

3       The Court must first determine whether the two actions
4   presently before it are substantially similar to Plaintiff's
5   remaining state court action.   If the lawsuits are not
6   substantially similar, there is no need to engage in the above-
7   described balancing test as abstention under Colorado River is
8   clearly inappropriate.   Nakash, 882 F.2d at 1416-1417.
9       After reviewing the pleadings, the Court easily finds the
10  three cases in issue to be substantially similar.   All three
11  cases involve claims of employment-related harassment,
12  retaliation, and discrimination brought by Plaintiff, and all are
13  largely premised on the same facts and events.   Although
14  Plaintiff's two federal actions include several claims not
15  pleaded in YCSC 03-76, that fact, standing alone, does not carry
16  sufficient weight to support a contrary finding.   See Id. at 1217
17  (holding that exact parallelism between cases is not required and
18  finding that concurrent state and federal actions were
19  substantially similar in spite of fact that cases involved
20  different claims).
21      Having concluded that Plaintiff's state and federal actions
22  are substantially similar, the Court can now evaluate the six
23  factors articulated as bearing on abstention.   That analysis
24  follows.
25      **a.   Jurisdiction over a Res**
26      Neither this Court nor the Yolo County Superior Court has
27  assumed jurisdiction over a res with respect to any of the cases
28  involved in this dispute.

12

1  Consequently, this factor cuts neither for nor against

2  abstention.

3      **b.    Relative Convenience of the Forums**

4          Defendants have chosen not to address this factor in their

5  briefs.  The Court notes, however, that Defendants have

6  specifically selected this forum on two separate occasions.

7  First, Defendants removed 05-CV-2439-MCE-KJM to the Eastern

8  District although the case was originally filed by Plaintiff in

9  Yolo County Superior Court.  Similarly, 06-128 MCE KJM was

10  originally filed in the Norther District, but was transferred to

11  the Eastern District pursuant to a transfer motion brought by

12  Defendants.  Rather than demonstrating any inconvenience,

13  Defendants' actions instead indicate a preference to litigate in

14  the present forum.  Consequently, the second factor weighs

15  against Defendants' request for abstention.

16      **c.    Desirability of Avoiding Piecemeal Litigation**

17          Defendants argue that piecemeal litigation will result if

18  this Court declines to abstain.  Specifically, Defendants

19  contend that allowing 05-cv-0725-MCE-KJM and 05-CV-2439-MCE-KJM

20  to go forward would lead to a duplication of effort and raise the

21  possibility of inconsistent results.  (Mem. P. & A. in Supp. Mot.

22  Abstain at 6-7).  The potential for duplicative effort and

23  inconsistent results, however, exists any time a federal case

24  proceeds concurrently with a state case.  Yet the Supreme Court

25  has held that the pendency of an action in state court is no bar

26  to proceedings concerning the same matter in federal court.

27  ///

28  ///

13

1  Colorado River, 424 U.S. at 813, 817.  Moreover, when parallel

2  suits do exist, "the mere potential for conflict . . . does not,

3  without more, warrant staying exercise of federal jurisdiction."

4  Id. at 816.  Consequently, the third Colorado River factor, as it

5  is properly understood, does not favor abstention unless "the

6  circumstances enveloping [the] cases will likely lead to

7  piecemeal litigation that is abnormally excessive or

8  deleterious."  Ambrosia Coal and Constr. Co. v. Pagés Morales,

9  368 F.3d 1320, 1333 (11th Cir. 2004)(emphasis added).

10        While acknowledging the potential for piecemeal litigation,

11  the Court has no indication that the likelihood of waste or

12  possibility of conflicting outcomes is any greater in the instant

13  matter than in the myriad of other federal cases with concurrent

14  state counterparts.  In addition, even if the Court were to grant

15  Defendants' requested stay, the potential for piecemeal

16  litigation would remain.  As discussed above, Plaintiff's federal

17  actions contain termination and post-termination causes of action

18  not pleaded in Plaintiff's Yolo County action.  Consequently,

19  Defendants will have to defend those claims in federal court,

20  regardless of whether a stay is granted or not.

21        In fact, abstaining in the instant matter may actually

22  encourage piecemeal litigation, as abstention will virtually

23  guarantee that resolution of the present dispute will require

24  litigation in two separate forums.  On the other hand, allowing

25  05-cv-0725-MCE-KJM and 05-CV-2439-MCE-KJM to proceed leaves open

26  the possibility that the parties will ultimately agree to

27  litigate all claims in one comprehensive action.

28  ///

1    In any event, the Court finds much of Defendants' argument
2    disingenuous.  Plaintiff's two supplemental actions became
3    necessary only as a result of Defendants' refusal to allow
4    Plaintiff to amend and supplement her original filings.  After
5    bringing the supplemental actions, Plaintiff renewed her attempts
6    to consolidate.  When Defendants continued to resist, Plaintiff
7    was forced to bring a Motion for Leave to Amend and Supplement in
8    Yolo County Superior Court.  Immediately before Plaintiff's
9    motion was scheduled for hearing, Defendants removed Plaintiff's
10   supplemental state court action to the United States District
11   Court, effectively preventing the Yolo County Superior Court from
12   consolidating the two actions.

13       In so doing, Defendants have ensured that Plaintiff's
14   termination and post-termination causes of action will not be
15   heard in Plaintiff's Yolo County Superior Court action.
16   Ironically, Defendants now ask this Court to abstain from hearing
17   these very causes of action because to do so would encourage
18   piecemeal litigation.  Defendants cannot have their cake and eat
19   it too.  Whatever their motivation, Defendants created the
20   present situation when they decided to split apart Plaintiff's
21   various claims.  This Court will not now reward Defendants by
22   relieving them from the consequences of their own actions.

23       **d.   Order in which Forums Obtained Jurisdiction**

24       The order in which state and federal forums obtained
25   jurisdiction is another factor courts should consider in deciding
26   whether <u>Colorado River</u> abstention is appropriate.  <u>Moses H. Cone</u>
27   <u>Memorial Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1, 15 (1983).
28   In evaluating this factor, "priority should not be measured

1  exclusively by which complaint was filed first, but rather in

2  terms of how much progress has been made in the two actions."

3  Id. at 21.

4      Here, it is undisputed that Plaintiff filed her Yolo County

5  Superior Court action nearly two years before filing the two

6  federal actions involved in the present motion.  More important

7  than the filing date, however, is the respective progress made in

8  the various cases.  A motion for summary judgment is pending in

9  Plaintiff's state court action.  (Reply to Pl.'s Opp. 2:10-12).

10 The motion was brought by Defendants and is scheduled for hearing

11 on March 16, 2006.  (Id.)  Plaintiff's two federal cases, on the

12 other hand, are currently awaiting resolution of the instant

13 Motion to Abstain.  No trial date has been set in any of the

14 cases.  (Opp. 7:9).

15     Defendants argue that significant discovery has been

16 conducted since the time Plaintiff's state court action was filed

17 in 2003.  (Mem. P. & A. in Supp. Mot. Abstain at 7-8).  While

18 Defendants assertion is factually accurate, Defendants do not

19 account for the fact that the cited discovery is relevant to all

20 four of Plaintiff's actions, not just YCSC 03-76.  (See Opp. 7:8-

21 9 (indicating that the discovery alluded to by Defendants

22 consists of four depositions and that said depositions were taken

23 in connection with all four pending actions); Mem. P. & A. in

24 Supp. Mot. Abstain at 7-8 (raising Plaintiff's four day

25 deposition as only evidence that significant discovery had

26 already taken place).

27 ///

28 ///

1    Consequently, none of Plaintiff's cases has progressed so
2    clearly ahead of the others so as to warrant the exceptional
3    remedy of abstention.   Nevertheless, because Plaintiff's Yolo
4    County Superior Court action was filed first, the fourth factor
5    does weigh slightly in favor of abstention.

6    **e.   Does State or Federal Law Control?**

7    Whether "federal law provides the rule of decision on the
8    merits" is another important consideration in determining whether
9    Colorado River abstention is appropriate.   Moses H. Cone, 460
10   U.S. at 23.   Indeed, "'[t]he presence of federal law issues [is]
11   a major consideration weighing against surrender [of
12   jurisdiction].'"   Nakash, 882 F.2d at 1416 (quoting Moses H.
13   Cone, 460 U.S. at 26).   The presence of federal claims weighs
14   even more heavily when those claims are brought under 42 U.S.C. §
15   1983.   See Tovar v. C.G. Billmeyer, 609 F.2d 1291, 1293 (9th Cir.
16   1979)(stating that the "'unflagging obligation' of the federal
17   courts to exercise the jurisdiction given to them . . . is
18   particularly weighty when those seeking a hearing in federal
19   court are asserting . . . their right to relief under 42 U.S.C.
20   § 1983" (quoting Colorado River, 424 U.S. at 817-818).   In these
21   circumstances, "conflicting results, piecemeal litigation, and
22   some duplication of judicial effort is the unavoidable price of
23   preserving access to the federal relief which section 1983
24   assures."   Tovar, 609 F.2d at 1293.

25   Here, a significant number of Plaintiff's causes of action
26   are brought under federal law.   Of the four causes of action pled
27   in 05-cv-0725-MCE-KJM, three are based on federal statutes.
28   ///

1   Similarly, six of the twenty-two causes of action pled in 05-2439

2   arise under federal law.  Of greater significance, however, is

3   the presence of section 1983 claims in both of Plaintiff's

4   federal actions.  With the balance of factors already counseling

5   against abstention, Plaintiff's section 1983 claims serve as a

6   final deathblow to any lingering uncertainty as to whether

7   abstention is appropriate in the instant matter.

8        **f.   Adequacy of State Proceeding to Protect Parties' Rights**

9        In evaluating whether <u>Colorado River</u> abstention is

10  warranted, courts should also inquire into whether concurrent

11  state court proceedings are adequate to protect the parties'

12  rights.  <u>Moses H. Cone</u>, 460 U.S. at 26-27.  In the instant

13  matter, Defendants argue that "there is not a shred of evidence

14  that that [sic] the Yolo County court cannot adequately protect

15  [p]laintiff's rights in that proceeding."  (Mem. P. & A. in Supp.

16  Mot. Abstain at 8:19-20).  In so doing, Defendants misinterpret

17  their obligations under <u>Colorado River</u>.  In ruling on a Motion to

18  Abstain, the Court's task "is not to find some substantial reason

19  for the exercise of federal jurisdiction []; rather the task is

20  to ascertain whether there exists 'exceptional' circumstances,

21  the 'clearest of justifications,' that can suffice . . . to

22  justify the surrender of that jurisdiction.  <u>Moses H. Cone</u>, 460

23  U.S. at 25-26.  Consequently, Defendants must affirmatively

24  demonstrate to the Court why Plaintiff's Yolo County action is

25  adequate to protect her rights.  Simply stating that Plaintiff

26  has presented no evidence to the contrary will not suffice.

27  ///

28  ///

18

1    In any event, it is clear to the Court that Plaintiff's

2  state court action, as it is currently constituted, will not

3  adequately protect her rights.  Because Defendants have chosen to

4  split Plaintiff's termination and post-termination causes of

5  action from the rest of her Yolo County lawsuit, the Yolo County

6  Superior Court is not in a position to hear any of these claims.

7  In addition, Defendants have resisted Plaintiff's attempts to

8  incorporate several other federal causes of action into her state

9  suit.  These claims are also without redress in Yolo County

10 Superior Court.  This Court is unwilling to decline jurisdiction

11 in the instant matter when doing so would work such a significant

12 prejudice on Plaintiff.

13    In Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir. 1989),

14 the Ninth Circuit added one additional consideration into the

15 Colorado River abstention analysis – whether a plaintiff's filing

16 of multiple lawsuits is motivated by an attempt to forum shop or

17 avoid adverse rulings in a parallel state court proceeding.

18 According to Defendants, Plaintiffs Eastern District filings are

19 "nothing more than veiled attempts at forum-shopping."  (Mem. P.

20 & A. in Supp. Mot. Abstain at 6:7-8).  Defendants find great

21 import in the fact that Plaintiff's two supplemental suits were

22 filed after Defendants moved for summary judgement in Plaintiff's

23 Yolo County suit.  (Id. at 6:15-17).  Defendants' clear

24 implication is that the supplemental filings were solely

25 motivated by a desire to secure another forum in the event that

26 Plaintiff's Yolo County action was dismissed.

27 ///

28 ///

19

1   Defendants' argument misses the mark.  As this Court has
2   repeatedly stressed, Plaintiff's multiple filings became
3   necessary only as a result of Defendants' refusal to allow her to
4   amend her original complaints.  In order to preserve her
5   termination and post-termination causes of action, Plaintiff was
6   forced to file two new lawsuits.  This was fully explained in
7   Plaintiff's Opposition.  Plaintiff has offered to consolidate all
8   four matters into one comprehensive state or federal action.
9   (Opp. 3:21-22).  Instead of accepting Plaintiff's offer,
10  Defendants have persisted in the present motion and have even
11  brought a Motion for Sanctions in a related case.[12]

12

13                          **CONCLUSION**

14

15  Colorado River abstention should be invoked only in
16  exceptional circumstances as federal courts have a virtually
17  unflagging obligation to exercise the jurisdiction given them.
18  ///

19

20  [12]Defendants have filed a Motion for Sanctions in 06-128 MCE
    KJM on the grounds that Plaintiff is pursuing two identical
21  actions in the Eastern District.  Defendants' motion is
    perplexing to this Court.  Defendants themselves removed
22  Plaintiff's supplemental state court action to the United States
    District Court.  Thus, it is Defendants that are responsible for
23  the presence of two nearly identical lawsuits in the Eastern
    District.  Defendants accuse Plaintiff of ignoring Defendants'
24  offers to consolidate 05-CV-2439-MCE-KJM and 06-CV-0128-MCE-KJM
    or, in the alternative, to dismiss 06-CV-0128-MCE-KJM.  (Mem. P.
25  & A. in Supp. Mot. Sanctions at 2-3).  Defendants contend that
    Plaintiff's silence constitutes bad faith and that Plaintiff is
26  acting in a vexatious manner.  (Id. at 3-5).  Defendants fail to
    point out, however, that Plaintiff has repeatedly offered to
27  consolidate all four of her cases into one comprehensive action,
    and that Defendants themselves have refused to respond to this
28  request.  (Opp. 3:21-22).  Defendants argument is disingenuous to
    say the least.

1   The circumstances under which abstention is appropriate are even

2   more limited when claims are brought under 42 U.S.C. section

3   1983.  Defendants, therefore, carry a heavy burden in bringing

4   the instant Motion to Abstain.

5        After weighing the relevant factors, the Court finds the

6   balance overwhelmingly tips against abstention.  The presence of

7   Plaintiff's 42 U.S.C. § 1983 claims only reinforces this

8   conclusion.  For these reasons, Defendants' Motion to Abstain is

9   DENIED.

10       IT IS SO ORDERED.

11  DATED: April 4, 2006

12

13

14  _____
    MORRISON C. ENGLAND, JR
15  UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

21